UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

NORMAN ROBERT BRIAN SANTIAGO,

    Plaintiff,

v.                                                                                             Civ. No. 19-523 GJF

ANDREW SAUL, *Commissioner of*
*the Social Security Administration*,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court upon Plaintiff's "Motion to Reverse and Remand for Rehearing with Supporting Memorandum" [ECF 17] ("Motion"). The Motion is fully briefed. *See* ECFs 21 (Response), 22 (Reply). Having meticulously reviewed the entire record and the parties' briefing, and for the reasons articulated below, the Court will **AFFIRM** the Commissioner's final decision, **DENY** Plaintiff's Motion, and **DISMISS** this case **WITH PREJUDICE**.

**I.  BACKGROUND**

Plaintiff was born in 1977 and completed schooling through the eighth grade. Administrative Record ("AR") 95, 213. Plaintiff last worked in March 2011, when he claimed to have left his temporary "waste management" job at a landfill because of his medical conditions. AR 84, 233, 286. He also reported having previously worked in maintenance, construction, landscaping, grounds-keeping, and in the warehouse and restaurant businesses. AR 84, 286, 633. In August 2015, Plaintiff was in a motor vehicle collision in which his car went under a tow truck and was then rear-ended by another vehicle. AR 92, 308. As a result, Plaintiff suffered a head injury and fractures in his right ankle, right femur, sternum, nose and at least nine ribs. AR 632. He also hospitalized for two weeks and had to "learn to walk again." *Id.* In September 2015,

while living in Albuquerque, Plaintiff applied for social security disability benefits, claiming that as of August 2015 he could no longer work due to two physical conditions ("arthritis" and "leg injury") and three mental conditions ("ADHD," "depression," and "PTSD"). AR 107.

In October 2015, the Social Security Administration (SSA) concluded that Plaintiff's current physical limitations were "not expected to last 12 continuous months" and that his mental limitations "[did] not preclude all work," such as "unskilled work." AR 109, 112, 116. In January 2017, upon Plaintiff's request for reconsideration, the SSA similarly concluded that he could perform unskilled, albeit sedentary, work. AR 138. In August 2018, after conducting a hearing at Plaintiff's request, an Administrative Law Judge (ALJ) concluded that Plaintiff could perform a reduced range of sedentary, unskilled work. In April 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, after which Plaintiff timely petitioned this Court for relief. AR 1; ECF 1.

## II. PLAINTIFF'S CLAIMS

Plaintiff contends that the ALJ erred by providing "insufficient reasons" for the weight she gave to opinions that addressed Plaintiff's mental functioning. Mot. 10-18. In addition, Plaintiff asserts that the ALJ erred by finding that he could adjust to other work that "exist[ed] in significant numbers." Mot. 19-20; AR 25.

## III. APPLICABLE LAW

### A. Standard of Review

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th

Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence

does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability.  *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920).  The claimant bears the burden of proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988).  In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a

listed impairment[1] or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n.5.

## IV. ALJ'S FINDINGS

In her written decision, the ALJ affirmed that she carefully considered "all the evidence" and "the entire record." AR 13, 15, 17-18, 24.

### A. Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since the date he filed his disability application. AR 15. At step two, the ALJ found that Plaintiff had the severe mental impairments of "mild neurocognitive disorder[,] anxiety[,] depression[,] and PTSD." *Id.*[2] At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, satisfied the the criteria of a listed impairment. AR 16-17.

### B. Residual Functional Capacity

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC.[3] Here, the ALJ found

---

[1] If the claimant can show that he has a listed impairment, he will be found to be disabled and the analysis stops. 20 C.F.R. § 416.920(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id.*

[2] The ALJ also found that Plaintiff had severe physical impairments associated with the motor vehicle accident (e.g., impairments associated with the fracture of his ribs, femur, and ankle). *Id.* Nevertheless, because Plaintiff's Motion does not allege any errors regarding the ALJ's assessment of Plaintiff's physical impairments, *see* Mot. 10-20, the Court does not significantly discuss the ALJ's evaluation of these physical impairments.

[3] *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *but cf. Winfrey*, 92 F.3d at 1023 (describing the RFC determination as technically the first part of step four).

that Plaintiff, who "requir[ed] a cane when walking" and had the physical RFC to "perform less than a full range of sedentary work," had the mental RFC to "make simple work-related decisions within an environment with few workplace changes . . . [and] have occasional and superficial interactions with co-workers."  AR 17.

In determining Plaintiff's mental RFC, the ALJ reviewed Plaintiff's testimony that he had flashbacks of the collision, had "difficulty sleeping at night and [having to] take[] a nap for over an hour each day," and "prefer[red] to be alone and would have trouble getting along with bosses because he does not like to be told what to do."  AR 18.  The ALJ also reviewed Plaintiff's statement on an SSA form that he had "trouble paying attention more than a few minutes at a time and following directions."  *Id.*  Nevertheless, the ALJ concluded that "the evidence fails to fully support [Plaintiff's] assertions of disability."  AR 24.

   1. *Medical and Other Evidence*

In reviewing the medical evidence, the ALJ found that "the record [did] not show that [Plaintiff] sought out consistent mental health treatment:"

> [Plaintiff] saw a therapist [a Licensed Professional Clinical Counselor, Emory Moore, LPCC] for about 3 months . . . , but he was discharged for no shows and failing to respond to attempts to contact him.  He also did not require any regular treatment to improve neurocognitive functioning post MVA [motor vehicle accident]. . . . In addition, the record does not show that the claimant sought out any regular urgent or emergency care for exacerbations in mental health symptomology, such as anger outbursts or intrusive thoughts.

AR 20 (internal citations omitted).  The ALJ also relied on the findings in the medical records that Plaintiff, *inter alia*, "was fully oriented with normal mood and affect upon examination;" "was cooperative with normal speech and memory;" "had attention within normal limits;" "had logical, very concrete thoughts;" "was alert, pleasant, and cooperative with normal mentation and cognition;" "displayed normal memory and concentration;" "[had] appropriate eye contact,

speech, and mood;" "was in no acute distress;" "was able to answer questions appropriately;" and "had normal speech and behavior." AR 20-21 (citations omitted).

In reviewing other evidence, the ALJ observed that Plaintiff "acknowledged that [his medication] helps him to sleep" and that "the record [did] not show that [Plaintiff] reported needing to nap during the daytime with any consistency." AR 21 (citation omitted). In addition, the ALJ found that Plaintiff's testimony that he "does not experience difficulties reading or writing" and that he "read[s] the news online during the day" showed that he could follow written instructions. AR 21, 23. Finally, the ALJ observed that Plaintiff's television watching indicated some ability to concentrate and that his "going to church, spending time with family, and having a few friends with whom he has contact" indicated some ability to be around others.

### 2. *Opinion Evidence*

The ALJ gave "some weight" and "little weight, respectively, to the opinions of state agency psychological consultants Diane Kogut, PhD, and Maurice Prout, PhD, both of whom opined that Plaintiff could "carry out simple instructions, make decisions, concentrate for 'moderate' periods of time, interact with others, and respond to changes ('moderately' and within reason)." AR 22-23 (quoting AR 115, 137). The ALJ found these opinions to be "somewhat consistent with the record, including medical records showing that [Plaintiff] was alert, pleasant, and cooperative with normal memory, mentation, cognition, and [the] ability to respond to questions." *Id.* (citations omitted).[4] The ALJ, however, declined to give these opinions greater weight because "[Drs. Kogut and Prout's] findings of 'moderate' difficulties [in] concentrating

---

[4] Dr. Prout's January 2017 opinion additionally found that Plaintiff could not follow simple *written* (in contrast to verbal) instructions. AR 23. The ALJ, however, found that such a limitation was "not consistent with the record as a whole, including [Plaintiff's] lack of consistent treatment for neurocognitive deficits; the clinical evidence of [Plaintiff's] intact mentation, memory, and cognition; [Plaintiff's] denial of having problems reading or writing; and his acknowledgement of reading the news online during the day." *Id.* (citations omitted).

and responding to changes [were] vague." AR 23. And to the extent such opinions might not have *completely* supported her RFC findings, the ALJ found that "[Plaintiff's] lack of regular mental health treatment and the evidence of [his] normal concentration, normal attention and fair focus" nevertheless supported her RFC findings. *Id.* (citations omitted).

The ALJ similarly gave "partial weight" to the December 2016 opinion of the consultative psychological examiner, Louise Wynne, PhD, who opined that Plaintiff could "interact with the public" but could "not carry out basic written instructions, [had] 'mild' difficulties maintaining concentration, [had] difficulty interacting with co-workers and supervisors, and 'might' have difficulty adapting to changes in the workplace." *Id.* (citing AR 633). Specifically, the ALJ gave "significant weight" to the finding that Plaintiff could interact with the public because that finding was "supported by the consultative examination where the claimant maintained good eye contact, related easily, and was cooperative" and was "consistent with evidence of the claimant maintaining friendships, spending time with family, and attending church." *Id.* (citations omitted). The ALJ, however, gave "limited weight" to the remainder of Dr. Wynne's opinion because (1) the evidence showed that Plaintiff could follow written instructions[5] and (2) "[t]he other statements . . . [were] vague, failing to set forth specific limitations in vocationally relevant terms." *Id.*

Finally, the ALJ gave "little weight" to the opinion of Plaintiff's clinical counselor, Mr. Moore, who opined that Plaintiff had "variable concentration, difficulty making appropriate decisions, and trouble accepting responsibility for his actions." AR 23 (citing AR 541-45 (Mr. Moore also noting that Plaintiff "fails to attend sessions unless mother-in-law or wife brings him," "has 4 no shows," and "fails to answer his phone or return calls")). The ALJ discounted this opinion because Mr. Moore "[was] not an acceptable medical source and only provided therapy to

---

[5] *See id.; supra* note 4 (ALJ discounting the same finding, which Dr. Prout incorporated into his January 2017 opinion, for the same reasons).

[Plaintiff] for a period of about 3 months, which [gave him] limited insight into [Plaintiff's] longitude functioning." *Id.* In addition, the ALJ stated that Mr. Moore's opinion did not "provide specific functional limitations." AR 23-24. Furthermore, "to the extent it suggest[ed] that [Plaintiff] [was] disabled," the ALJ found the opinion to "not [be] consistent with the record as a whole, including medical records showing that the claimant was alert, pleasant, and cooperative with normal memory, mentation, concentration, cognition, and ability to respond to questions." AR 24 (citations omitted).

### C. Steps Four and Five

At step four, given the RFC described above, the ALJ found that Plaintiff was unable to perform his past relevant work. AR 24.

At step five, the ALJ asked the vocational expert whether "jobs exist in the national economy" that someone with Plaintiff's RFC (and work experience, education, and age) could perform. AR 25. The vocational expert then testified that "within the national economy" there were 4,000 "toy stuffer" jobs, 1,800 "eyeglass frames polisher" jobs, and 6,000 "addresser" jobs that such an individual could perform. AR 25, 102. In reviewing this testimony, the ALJ observed that the vocational expert "persuasively used her professional experience to determine the impact of using a cane, which is not specifically addressed by the DOT [Dictionary of Occupational Titles]." AR 25. The ALJ also found such testimony to otherwise be "consistent with the information contained in the DOT." *Id.* Consequently, the ALJ found that, "[b]ased on [such] testimony," Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.*

## V. ANALYSIS

### A. The ALJ Did Not Err in Weighing the Opinions

Plaintiff argues that the ALJ provided "insufficient reasons" for not giving greater weight to the opinions of the consulting/consultative psychologists (Drs. Kogut, Prout, and Wynne) and Plaintiff's clinical counselor (Mr. Moore). Mot. 10-18. This Court concludes otherwise.

#### 1. Applicable Legal Standard

"[I]n determining what weight to give any medical opinion," the ALJ must "consider a series of [six] specific factors." *Hamlin*, 365 F.3d at 1215 (emphasis added) (citation omitted).[6] This requirement also applies to opinions from those medical sources who do not qualify as "acceptable medical sources" (e.g., clinical counselors). 20 C.F.R. §§ 416.902(a); 416.927(f). Nevertheless, in discussing the weight given to an opinion from any medical source, if "[t]he ALJ provided *good reasons*," then "[n]othing more was required." *Oldham*, 509 F.3d at 1258 (emphasis added) (citation omitted).[7]

#### 2. Analysis

The ALJ provided good reasons for the weight she gave to the opinions of Drs. Kogut and Prout. For example, the ALJ found that Drs. Kogut and Prout's opinions that Plaintiff could "carry

---

[6] "Those factors are: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors." *Golden-Schubert v. Comm'r*, 773 Fed. Appx. 1042, 1046 n.2 (10th Cir. 2019) (unpublished) (citing 20 C.F.R. § 416.927(c)). The ALJ, however, is not required to "explicitly discuss" or "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham*, 509 F.3d at 1258 (citations omitted); *see also* § 416.927(f) (stating that "not every factor for weighing opinion evidence will apply in every case").

[7] Although *Oldham*, 509 F.3d at 1258, involved only a *treating* source's medical opinion, "good reasons" are also required for opinions from medical sources that are *examining*, *non-examining*, and even *non-acceptable*. *See Chapo*, 682 F.3d at 1291 ("specific, legitimate reasons" required for examining source's opinion (internal quotation marks omitted)); *Golden-Schubert*, 773 Fed. Appx. at 1047-1050 ("good reasons" required for non-examining source's opinion (internal quotation marks omitted)); *Mounts v. Astrue*, 479 Fed. Appx. 860, 865-66 (10th Cir. 2012) (unpublished) ("good reasons" required for non-acceptable medical source's opinion (internal quotation marks omitted)).

out simple instructions, make decisions, concentrate for 'moderate' periods of time, interact with others, and respond to changes ('moderately' and within reason)" were "somewhat consistent with the record, including [the] medical records." AR 22. The ALJ, however, found that two phrases in the opinions (i.e., "concentrate for *moderate* periods of time" and "respond to changes (*moderately* and within reason)") were "vague"—particularly to the extent they may have suggested that Plaintiff had moderate difficulties concentrating and responding to changes. AR 23 (emphasis added) (quoting 115, 137). Consequently, the ALJ declined to give these opinions greater weight—particularly in light of the evidence suggesting Plaintiff had "normal concentration," as well as "normal attention and fair focus" and a "lack of regular mental health treatment." *Id.* In light of such good reasons, "[n]othing more was required." *Oldham*, 509 F.3d at 1258.[8]

Similarly, although the ALJ found that the medical evidence supported part of Dr. Wynne's opinion, she also found that the remainder of Dr. Wynne's opinion deserved only "limited weight," given that (1) Dr. Wynne opined that Plaintiff could not follow written instructions—and Plaintiff later testified that he had *no* difficulties reading or writing and (2) Dr. Wynne's remaining comments (i.e., that Plaintiff had "'mild' difficulties maintaining concentration, [had] difficulty interacting with co-workers and supervisors, and 'might' have difficulty adapting to changes in the workplace" ) were vague, as they did not "set forth specific limitations in vocationally relevant terms." AR 23 (citing AR 633). The Court likewise finds that these were good reasons for

---

[8] *See also Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (upholding an ALJ's rejection of a treating physician's opinion—which the ALJ found to be "generic and [to] not accurately assess plaintiff's true functional capabilities"— and noting that, although the opinion described plaintiff's limitations as "severe," it did not "indicate exactly what plaintiff [could] do in relation to the [applicable] requirements of sedentary, light, moderate, or heavy work").

discounting the remining portion of Dr. Wynne's opinion, and the Court again holds that "[n]othing more was required." *Oldham*, 509 F.3d at 1258.[9]

Finally, the ALJ gave good reasons for the "little weight" she gave to the opinion of Plaintiff's clinical counselor, Mr. Moore. Specifically, the ALJ reasoned that, although this opinion classified Plaintiff as having "*variable* concentration, *difficulty* making appropriate decisions, and *trouble* accepting responsibility for his actions," it did not "provide *specific* functional limitations." AR 23-24 (emphasis added); *see also supra* note 8. Furthermore, the ALJ also reasoned that Mr. Moore "[was] not an acceptable medical source and only provided therapy to [Plaintiff] for a period of about 3 months" and that—to the extent his opinion suggested Plaintiff was disabled—the medical records showed otherwise. AR 24 (ALJ noting that the medical records showed, *inter alia*, findings of normal concentration). In light of these good reasons, the Court once again holds that "[n]othing more was required." *Oldham*, 509 F.3d at 1258.[10]

In sum, the Court holds that the ALJ provided good reasons for the weight she gave to the opinions of these four medical professionals—and therefore did not err in weighing these opinions.

---

[9] The Commissioner persuasively argues that—in any event—the ALJ *did* "reasonably accommodate[] these vague opinions" (or at least the vague portions of these opinions) and that Plaintiff, therefore, "has not established harmful error." Resp. 11-12; *see also Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (stating than "an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity"); *Terwilliger v. Comm'r, SSA*, No. 19-1028, 2020 WL 290421, at *4 (10th Cir. Jan. 21, 2020) (unpublished) (stating that "[t]he rationale [for finding such harmless error] is that 'the claimant is not prejudiced because giving greater weight to the opinion would not have helped [him]'" (quoting *Mays*, 739 F.3d at 578)). Nevertheless, in light of the Court's finding that the ALJ provided good reasons for the weight she gave to these vague opinions—and therefore did not error in weighing such opinions—the Court need not address whether, or to what extent, Plaintiff's mental RFC would have incorporated these vague pronouncements.

[10] And to the extent any of "[P]laintiff's contentions amount to an argument that this [C]ourt should reweigh the evidence," *see, e.g.*, Mot. 13-18, this Court cannot do so. *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (citing *Oldham*, 509 F.3d at 1257)).

### B. Substantial Evidence Supports the ALJ's Finding That Suitable Work Existed in Significant Numbers in the National Economy

Plaintiff next claims that substantial evidence does not support the ALJ's finding that Plaintiff was "capable of making a successful adjustment to other work that exists in *significant numbers in the national economy.*" Mot. 19-20; AR 25 (emphasis added). Specifically, Plaintiff asserts that the ALJ did not discuss why she found the number of jobs to be "significant"—and that such a finding, therefore, is not supported by substantial evidence. Mot. 19-20; Reply 3. This Court disagrees.

#### 1. Applicable Legal Standard

A claimant is not disabled if he can "engage in any other kind of substantial gainful work which exists in the national economy"—regardless of whether "such work exists in the immediate area," "a specific job vacancy exists," or "[the claimant] would be hired if he applied." 42 U.S.C. § 423(d)(2)(A). And work is deemed to exist in the national economy "when it exists in significant numbers"—and not as "*[i]solated* jobs that exist only in *very limited numbers* in *relatively few locations.*" 20 C.F.R. § 416.966(a)-(b) (emphasis added). The Tenth Circuit has "never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number.'" *Raymond v. Astrue*, 621 F.3d 1269, 1274 & n.2 (10th Cir. 2009) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992)). The Tenth Circuit has, however, "implied that 11,000 national jobs was a significant number." *Evans v. Colvin*, 640 F. Appx. 731, 735 (10th Cir. 2016) (unpublished) (citing *Rogers v. Astrue*, 312 F. Appx. 138, 142 (10th Cir. 2009) (unpublished)).[11]

---

[11] *See also Gonzales v. Saul*, No. 19-93 SCY, 2020 U.S. Dist. LEXIS 10519, 2020 WL 364843, *8 (D.N.M. Jan. 22, 2020) (referencing a sample of "other cases across the country in which courts have affirmed an ALJ's factual determination that even 10,000 jobs are numerically significant" (citing *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs significant); *Mills v. Berryhill*, No. 16-2209, 2017 WL 3494223 (W.D. Ark. Aug. 15, 2017) (12,562 jobs); *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 178 (W.D.N.Y. 2018) (9,046 jobs); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016) (6,000 jobs); *Murray v. Berryhill*, No. 17-1086, 2018 WL 2159788, at *4-5 (D. Kan. May 10, 2018) (6,000 jobs))).

In reviewing an ALJ's "*finding* of numerical significance," *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (emphasis in original), a court must consider such a finding to be "conclusive if supported by substantial evidence." *Biestek*, 139 S. Ct. at 1153 (citation omitted). In determining whether substantial evidence supports an ALJ's finding of numerical significance for jobs in the *national* economy, an ALJ is not, for example, required to "engage[] in a multi-factor analysis to assess whether there are significant jobs in the *regional* economy." *Raymond*, 621 F.3d at 1274 & n.2 (emphasis added) (noting that "the proper focus generally must be on jobs in the national, not regional, economy" and that the multi-factor analysis previously set forth in *Trimiar*, 966 F.2d 1326, applied to "the number of available jobs in the *regional* economy" (emphasis in original)); *see also Biestek*, 139 S. Ct. at 1152-53 (holding that a vocational expert's testimony regarding the number of jobs in the national economy—accompanied by her refusal to provide the underlying job data—was still not "categorically preclude[d]" from counting as "substantial evidence"); *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) (finding that a vocational expert's testimony that "there were jobs [a claimant] could perform" qualified as "substantial evidence supporting the ALJ's conclusion that plaintiff was not disabled").

    2. *Analysis*

The Court holds that substantial evidence supports the ALJ's finding that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 25. First, the ALJ found that Plaintiff was able to perform at least three "representative occupations" that had a combined total of 11,800 jobs in the national economy—an amount that is above what the Tenth Circuit has "implied . . . was a significant number," *Evans v. Colvin*, 640 F. Appx. at 735, and that is significantly larger than (and in some cases nearly double) what other courts have found to be significant. *See supra* note 11. Second, before relying

on such a finding to conclude that other suitable work "exist[ed] in significant numbers," the ALJ also ensured that it was based on testimony from a qualified professional whose testimony was both reliable and consistent with the DOT.  *See* AR 25, 100-04 (also showing counsel had no objections to the vocational expert's qualifications or the foundations on which her testimony were based).

In sum, considering both the *quantity* of the other suitable work and *quality* of the testimony supporting the ALJ's resulting finding, the Court holds that the ALJ's finding of numerical significance is supported by "substantial" (i.e., "more than a mere scintilla" of) evidence—and is therefore "conclusive."  *Biestek*, 139 S. Ct. at 1153-54.

## VI.  CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that her findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision is **AFFIRMED**, that Plaintiff's Motion is **DENIED**, and that this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*